1

2

3

4                        UNITED STATES DISTRICT COURT

5                      NORTHERN DISTRICT OF CALIFORNIA

6

7    PORTIA LEMMONS,                      Case No.  12-cv-03936-JST

               Plaintiff,
8
                                          **ORDER RE: CROSS-MOTIONS FOR**
9         v.                              **SUMMARY JUDGMENT**

10   ACE HARDWARE CORPORATION, et al.,    Re: ECF Nos. 64, 80

               Defendants.
11

12         In this action for discrimination on the ground of disability in violation of the Unruh Act,

13   the California Disabled Persons Act ("CDPA"), and the Americans with Disabilities Act, both

14   parties move for summary judgment with respect to Plaintiff Lemmons' claims under the Unruh

15   Act and the CDPA.  For the reasons set forth below, both motions are GRANTED IN PART and

16   DENIED IN PART.

17   **I.        BACKGROUND**

18             **A.        The Parties and Claims**

19         Plaintiff Portia Lemmons brings this action against Defendants Ace Hardware Corporation

20   ("Ace"), Berkeley Hardware, Inc., and EQR-Acheson Commons Limited Partnership ("EQR") for

21   claims arising out of Defendants' purported denial of access to disabled persons at the Berkeley

22   Ace Hardware store in Berkeley, California ("the store").  Compl., ECF No. 1.  Ace and Berkeley

23   Hardware have a franchising agreement that permits Berkeley Hardware to operate the store while

24   using the "Ace" name.  EQR owns the building in which the store is located and leases it to

25   Berkeley Hardware.  Lemmons alleges that she visited the store multiple times over the last

26   several years, and that each time, she encountered physical barriers that prevented her from

27   shopping at the store without assistance, which caused her to suffer difficulty, discomfort, and

28   embarrassment.

1   Lemmons has asserted three claims against Defendants in the operative complaint in

2   connection with Defendants' failure to remove the barriers: (1) a claim for "denial of full and

3   equal access to public facilities in a public accommodation" under the California Disabled Persons

4   Act ("CDPA"), California Civil Code section 54; (2) a claim for discrimination in violation of the

5   Unruh Act, California Civil Code section 51; and (3) a claim under the Americans with

6   Disabilities Act of 1990.

7   **B.     Relevant Facts**

8   **1.     Lemmons**

9   Portia Lemmons has lived with cerebral palsy since birth.  Cabalo Decl., Ex. 1 at 7:22-

10   8:11; Lemmons Dec. ¶ 1.  She is unable to walk or perform daily living activities without

11   assistance, such as maintaining personal hygiene, grooming, and dressing.  Id. at 7:22-8:11.  Her

12   cerebral palsy also affects her speech; people often believe that she has a cognitive disability

13   because of her speech difficulties.  Lemmons Dec. ¶ 1.  Though Lemmons has several attendants,

14   she has her own apartment and is able to execute many daily tasks on her own, including basic

15   shopping.  Id.  She uses a motorized wheelchair to get around.  Id.

16   **2.     The Store**

17   The building that houses Berkeley Ace Hardware was constructed in 1915 and has a main

18   floor, a basement, and a mezzanine. There are stairways to the basement and mezzanine.  The

19   building has a service elevator that is not designated for public use.  Carpenter Decl. ¶ 2.

20   Since June 30, 2001, the lease for the building has been subject to termination on 30 days'

21   notice.  For that reason, Berkeley Hardware has not made any physical changes to store since 2004

22   other than minor changes to the width of the aisles based on the shelving of merchandise.  Id. ¶¶ 4,

23   10.

24   Berkeley Hardware admits that it has operated the store as a public accommodation within

25   the meaning ADA at all relevant times.  Berkeley Hardware's Resp. to RFAs Nos. 14, 15, 19.

26   EQR admits that it has owned the building in which the store is located at all relevant times.

27   EQR's Resp. to RFAs Nos. 14-16, 18.  EQR acquired the building in September 2010 as part of a

28

United States District Court
Northern District of California

large development project to create new mixed use space. Cabalo Decl., Ex. 6, Solar Dep. at 28:22-24; Cabalo Dec., Ex. 7, EQR's Interrog. Resp. No. 21.  The project was approved in December 2012 but subjected to appeals that concluded in June 2013.  Exhibit Solar at 39:16-19.  The demolition of the building is scheduled for January 2015 with construction to be completed 24 months later. EQR is working through the construction drawings and the permit process.  Exhibit Solar at 40:4-15.  .

### 3.    Franchising Agreement

Berkeley Hardware operates as an Ace member store pursuant to the "ACE Membership Agreement," which permits Berkeley Hardware to use the "Ace" name, utilize Ace's customer database and credit card system, sell "Ace"-branded products, utilize training sponsored by Ace, and benefit from Ace marketing, among other things. Cabalo Decl., Ex. 5, Carpenter Dep. at 123:1-139:18; Opp'n Cabalo Decl., Ex. 1, 3-5 & Attachment A.  Further, the agreement requires Berkeley Hardware to comply with all federal and state laws and to provide certain training to its employees.  Opp'n Cabalo Decl., Ex. 1 at 32:16-37:19 & Ex. 1, 3.  Ace has the contractual right to terminate the agreement if Berkeley Hardware fails to comply with these requirements. Id.

Berkeley Hardware manages the store exclusively.  Neither Ace nor EQR have a role in the management of the store or its configuration.  Carpenter Decl. ¶ 7.

### 4.    Seismic Retrofit

The building underwent a $75,000 earthquake retrofit in 1997, which required extensive construction work.  Cabalo Decl., Ex. 8, Bill Carpenter Dep. at 48:18-53:2; Cabalo Decl., Ex. 9, Moore Dep. at 57:3-11; Cabalo Dec., Ex. 6 Solar Dep. at 49:22-50:8; Margen Decl. ¶¶ 5, 8, 9 & Ex. 3 at 00001, 00002, 00013.  This work included reconstruction of sections of the foundation; changes to the footings of the building; installation of rebar into parts of the basement floor and walls; and wall framing.  Id.  It also included opening a section of the roof to install steel beams for the seismic upgrades.  Id.

### 5.    Barriers that Lemmons Encountered

Lemmons has visited the store many times in the last several years.  She visited it on 13

occasions over the last two years.  During each of those visits ("the visits at issue"), she encountered barriers that prevented her from having full access to the store.  The following is a list of the visits at issue:

- January 16, 2011.  Lemmons had trouble with the narrow aisles and merchandise blocking the way.  Lemmons Decl. ¶ 13.

- May 1, 2011.  She had trouble with the narrow aisles and merchandise blocking the way.  Id. ¶ 14.

- May 7, 2011.  She went to the store for garbage bags, which she believes were located downstairs.  Lemmons Dec. ¶ 15.  Store employees did not offer to take her downstairs in the elevator and was told to wait the register while an employee went to look for the garbage bags.  Id.

- August 21, 2011.  She had difficulty with the narrow aisles and merchandise blocking the way.  Id. ¶ 16.

- On October 9, 2011.  She went to the store for a shower mat and tension rod, which she believes were located downstairs at the time. An employee who assisted her did not offer to take her downstairs in the elevator to look at options. Instead, the employee told Plaintiff to wait by the register.  Id. ¶ 17.

- November 17, 2011.  Lemmons went to the store for garbage bags, which she believes were located downstairs.   An employee who assisted her did not offer to take her downstairs in the elevator to look at garbage bags.  Instead, she was told to wait by the register.  Id. ¶ 18.

- November 23, 2011.  Lemmons went to the store for garbage bags, which she believes were located downstairs at the time. An employee who helped her did not offer to take her downstairs in the elevator to look at garbage bags.  Instead, she told her to wait  by the register.  Id. ¶ 19.

- December 16, 2011.  Lemmons went to the store for bleach, which she believes was located downstairs.  An  employee who assisted her did not offer to take her downstairs

United States District Court
Northern District of California

4

in the elevator to look at cleaners. Instead, she was told to wait by the register. Id. ¶ 20.

- December 30, 2011.  Lemmons went to the store for garbage bags, which she believes were located downstairs.  The employee who assisted her did not offer to take her downstairs in the elevator and instead told her to wait by the register.  Id. ¶ 21.

- January 16, 2012.  Lemmons went to the store for a funnel, which she believes was located on the main floor.  An employee assisted her.  Lemmons tried to accompany her the employee but had much difficulty with the narrow aisles and merchandise blocking the way. The employee had to move merchandise out of the way for her.  Id. ¶ 22.

- February 3, 2012.  Lemmons went to the store for garbage bags and plant food.  The garbage bags were located downstairs and the plant food was located on the main floor.  Store employees did not offer to take her downstairs in the elevator to look at garbage bags.  Instead, an employee told her to wait by the register while an employee went to look for the items she requested.  Id. ¶ 23.

- July 20, 2012.  Lemmons went to the store for garbage bags, which she believes were located downstairs.  Employees did not offer to take her downstairs in the elevator to look at garbage bags.  Instead, an employee told her to wait by the register while another employee went to look for garbage bags.  Id. ¶ 24.

- July 21, 2012.  Lemmons went to the store for a spray handle, which she believes was located on the main floor.  She attempted to accompany the employee who assisted her but encountered much difficulty dealing with the narrow aisles and merchandise blocking the way.  Id. ¶ 25.

On these occasions, Lemmons claims to have suffered embarrassment and difficulty due the lack of accessible parking, an inaccessible entrance to the store, narrow store aisles, merchandise in the aisles, and inaccessible paths of travel within the store.  Lemmons Decl. ¶¶ 8, 26; Margen Decl. at ¶¶ 5-7 & Ex. 4, Item Nos. 1.7, 1.8, 1.9, 1.10, 1.11, 1.12, 1.13, 2.3, 2.4, 2.9. Defendants do not dispute that these physical conditions constituted barriers under the ADA.

United States District Court
Northern District of California

1    Berkeley Hardware and EQR admit that Lemmons' access consultant, Peter Margen,

2    accurately measured the physical conditions at the store for each of the visits at issue.  Cabalo

3    Decl., Ex. 4, EQR's Resp. to RFAs Nos. 1, 2; Cabalo Decl., Ex. 2, Berkeley Hardware's Resp. to

4    RFAs Nos. 1, 2.  Margen concluded that the building has at least 32 access barriers.  Margen

5    Decl., Ex. 4.

6    Lemmons has never written a letter or spoken with anyone at Berkeley Hardware or EQR

7    to complain about the treatment she received at the store.  ECF No. 64, Exhibit A at 129:15-25.

8    Lemmons admits that there are other stores near her apartment where she could purchase the items

9    that she bought at the store during the visits at issue.  Id. at 120:10-125:3.

10                          **6.      Berkeley Hardware's Assistance to Customers**

11   Several of Berkeley Hardware's employees testified that they have assisted disabled

12   customers, including Lemmons.  Some of these employees ask customers to wait at the front of

13   the store when they are going downstairs to retrieve items.  ECF No. 64, Exhibit B 29:24-30:3.

14   Some employees have assisted several wheelchair-bound customers in using the elevator.

15   ECF No. 64, Exhibit C at 31:20-22; Exhibit D, 17:18-22.

16           **C.      Procedural History**

17   Lemmons, Berkeley Hardware, and Ace entered into a court-enforceable settlement

18   agreement on July 12, 2013, pursuant to which Berkeley Hardware and Ace agreed to perform

19   some corrective work in the store and to make certain changes to their policies governing

20   employee training.  ECF No. 57.  EQR joined the settlement on July 20, 2013.  Cabalo Decl. ¶ 3.

21   The parties did not reach an agreement as to damages, attorney's fees, or costs.

22           **D.      Jurisdiction**

23   The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367.

24   **II.     LEGAL STANDARD**

25   Summary judgment is proper when a "movant shows that there is no genuine dispute as to

26   any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

27   "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by"

28

6

citing to depositions, documents, affidavits, or other materials.  Fed. R. Civ. P. 56(c)(1)(A).  A party also may show that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(B).  An issue is "genuine" only if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  A fact is "material" if the fact may affect the outcome of the case.  Id. at 248.  "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party."  Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).

Where the party moving for summary judgment would bear the burden of proof at trial, that party bears the initial burden of producing evidence that would entitle it to a directed verdict if uncontroverted at trial.  See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000).  Where the party moving for summary judgment would not bear the burden of proof at trial, that party bears the initial burden of either producing evidence that negates an essential element of the non-moving party's claim, or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.  If the moving party satisfies its initial burden of production, then the non-moving party must produce admissible evidence to show that a genuine issue of material fact exists.  See Nissan Fire & Marine Ins. Co. v. Fritz Cos. 210 F.3d 1099, 1102-03 (9th Cir. 2000).

The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment."  Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996).  Indeed, it is not the duty of the district court to "to scour the record in search of a genuine issue of triable fact."  Id.  "A mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support the complaint."  Summers v. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997) (citation and internal quotation marks omitted).  If the non-moving party fails to make this showing, the moving party is entitled to summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

United States District Court
Northern District of California

7

III.   **DISCUSSION**

Lemmons moves for summary judgment on her claims under the Unruh Act and the CDPA and seeks statutory minimum damages under the Unruh Act of $4,000 for each of the 13 visits at issue. Lemmons' Unruh and CDPA claims are predicated on violations of Title III of the ADA.

Defendants oppose the motion, arguing that a genuine issue of material fact exists with respect to whether Lemmons suffered discrimination in violation of the ADA and whether she suffered difficulty, discomfort, or embarrassment under the Unruh Act. Additionally, Defendants move for summary judgment on two of their affirmative defenses, arguing that, even if Lemmons establishes her Unruh Act claim, that claim fails in light of the applicable statute of limitations and the avoidable consequences doctrine. Finally, Defendants move for summary judgment as to Lemmons' claims against Ace on the ground that Ace is not an owner, lessee, or operator of the store within the meaning of the ADA.

As will be discussed below, the Court concludes that Lemmons is entitled to summary judgment on her claim under the Unruh Act with respect to Berkeley Hardware and EQR, and that Ace is entitled to summary judgment with respect to the claims Lemmons has asserted against it. Accordingly, both motions will be GRANTED IN PART and DENIED IN PART.

A.   **Unruh Act Claim**

The Unruh Civil Rights Act provides that "[a]ll persons . . . are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). The purpose of the Unruh Act "is to compel a recognition of the equality of citizens in the right to the peculiar service offered" by the entities covered by the Act. Marina Point, Ltd. v. Wolfson, 30 Cal.3d 721, 737 (Cal. 1982) (citation omitted).

To recover damages for a construction-related accessibility claim under the Unruh Act, a plaintiff must show (1) "intentional discrimination in public accommodations in violation of the terms of the Act," Munson v. Del Taco, Inc., 46 Cal. 4th 661, 668 (Cal. 2009) & Cal. Civ. Code § 51(b); and (2) that she suffered injury, Thomas Mundy v. Pro-Thro Enterprises, 192 Cal. App. 4th

1  Supp. 1, 5 (Cal. App. Dep't Super. Ct. 2011) & Cal. Civ. Code § 55.56.

2           **1.      Discrimination**

3           A plaintiff can establish the first element of an Unruh Act claim by establishing a violation

4  of the ADA.  See Cal. Civ. Code § 51(f) (providing that "[a] violation of the right of any

5  individual under the Americans with Disabilities Act of 1990 . . . shall also constitute a violation

6  of this section").  When an Unruh Act claim is premised on a violation of the ADA, a plaintiff

7  need not show intent.  See Cal. Civ. Code § 51(f); Munson v. Del Taco, Inc., 46 Cal. 4th 661, 670,

8  208 P.3d 623, 628 (Cal. 2009) ("We conclude that a plaintiff proceeding under section 51,

9  subdivision (f) may obtain statutory damages on proof of an ADA access violation without the

10 need to demonstrate additionally that the discrimination was intentional.").

11          The ADA was enacted "to provide clear, strong, consistent, enforceable standards

12 addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(2).  Its

13 passage was premised on the congressional finding that discrimination against the disabled is

14 "most often the product, not of invidious animus, but rather of thoughtlessness and indifference,"

15 of "benign neglect," and of "apathetic attitudes rather than affirmative animus."  Alexander v.

16 Choate, 469 U.S. 287, 295-96 (1985).

17          Under the ADA,

18                No individual shall be discriminated against on the basis of
                 disability in the full and equal enjoyment of the goods, services,
19               facilities, privileges, advantages, or accommodations of any place of
                 public accommodation by any person who owns, leases (or leases
20               to), or operates a place of public accommodation.

21 42 U.S.C. 12182(a).

22           "To prevail on a discrimination claim under Title III, a plaintiff must show that: (1) he is

23 disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or

24 operates a place of public accommodation; and (3) the plaintiff was denied public

25 accommodations by the defendant because of his disability."  Arizona ex rel. Goddard v. Harkins

26 Amusement Enterprises, Inc., 603 F.3d 666, 670 (9th Cir. 2010) (citation omitted).

27          As will be discussed below, Lemmons has pointed to sufficient evidence to establish each

28

United States District Court
Northern District of California

1    of these three elements as to Berkeley Hardware and EQR.  Because Defendants fail to point to

2    evidence that raises a genuine issue of material fact with respect to any of these elements as they

3    pertain to Berkeley Hardware and EQR, Lemmons' motion for summary judgment must be

4    GRANTED as to Berkeley Hardware and EQR.

5           On the other hand, Defendants have shown that Ace cannot be held liable for violations of

6    the ADA at the store.  Because Lemmons has failed to raise a genuine issue of material fact with

7    respect to this claim, Defendants' motion for summary judgment is GRANTED as to Ace.

8                                    a.      Disability

9           Under the ADA, as well as California law, a person is disabled when that person has a

10   physical impairment that substantially limits one or more major life activities. 42 U.S.C. §

11   12102(2); Cal. Gov't Code § 12961.

12          Here, Lemmons has established, and Defendants do not dispute, that Lemmons is disabled

13   within the meaning of the ADA.  Lemmons has had cerebral palsy since birth, uses a wheelchair

14   for mobility, and has a speech impediment.  Cabalo Decl., Ex.1, Lemmons Dep. at 7:22-8:11;

15   Lemmons Decl. ¶ 1; Cabalo Decl., Ex. 2, Berkeley Resp. to RFAs, Nos. 4-9; Cabalo Decl., Ex. 3,

16   Ace Resp. to RFAs, Nos. 4-9; Cabalo Decl., Ex. 4, EQR Resp. to RFAs Nos. 4-9.

17                                   b.      Owns, Lease, or Operates a Place of Public Accommodation

18          Under the ADA, a "public accommodation" includes a hardware store.  42 U.S.C. §

19   12181(7)(E) (providing that "public accommodation" includes a "hardware store").

20          Here, Defendants have admitted that the store falls within the definition of a "public

21   accommodation" under the ADA.  See Cabalo Decl., Ex. 2, Berkeley Hardware's Resp. to RFAs

22   Nos. 14, 15, 19; id., Ex. 4, EQR's Resp. to RFAs, Nos. 14-16, 18.  Additionally, Defendants admit

23   that Berkeley Hardware operates the store and thus can be liable under the ADA.

24          Ace and EQR, however, contend that they do not own, lease, or operate the store and thus

25   cannot be liable under the ADA.  The Court addresses the arguments of each of these defendants

26   in turn.

27

28

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

### i.     Ace

Defendants move for summary judgment on the question of whether Ace can be held liable for violations of the ADA as an "operator."  Defendants acknowledge that there is a contract between Ace and Berkeley Hardware called the "Ace Hardware Membership Agreement" pursuant to which Ace is a franchisor and Berkeley Hardware is a franchisee.  Defendants contend that this licensing agreement gives Ace control over physical aspects of the store only in so far as such aspects are related to the use of its trademark and trade dress, but that it does not give Ace any authority over "accessibility issues."  Defendants contend that, without this authority, Ace cannot be held liable for ADA violations by virtue of being a franchisor.

Lemmons opposes the motion, arguing that Ace is an "operator" within the meaning of the ADA because it is in a position to ensure that Berkeley Hardware complies with disability access laws.  Lemmons also contends that Ace's control over the store is evinced by the fact that Ace was a signatory to the settlement agreement approved by the Court, pursuant to which Ace will be jointly and severally liable for attorney's fees.

Title III of the ADA prohibits discrimination "by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).  The Ninth Circuit has interpreted the term "to operate" as "to put or keep in operation," "to control or direct the functioning of," or "to conduct the affairs of; manage." Lentini v. California Ctr. for the Arts, Escondido, 370 F.3d 837, 849 (9th Cir. 2004).  To be considered an "operator" under this definition, a person or entity must have an active and significant degree of control over the access-related aspects of the facility in question. See id. (holding that an individual was an "operator" because he "was in a position of authority, having the ability to instruct the Center staff on who could or could not be admitted to the theater" and "in this position of authority, actively participated in the discriminatory acts"); cf. Aikins v. St. Helena Hosp., 843 F. Supp. 1329, 1335 (N.D. Cal. 1994) (holding that an individual was not "operator" because he "ha[d] no authority to enact or amend hospital policy" and thus was not "in a position to ensure nondiscrimination").

Importantly, the Ninth Circuit relied on Neff v. Am. Dairy Queen Corp., 58 F.3d 1063,

1066 (5th Cir. 1995), in defining the term "to operate." <u>Lentini</u>, 370 F.3d at 849 ("We agree with the Fifth Circuit's guidelines for defining the scope of the verb "to operate" in this context."). In <u>Neff</u>, the Fifth Circuit held that the meaning of "operator" in the context of franchising agreements turned on whether the franchisor "*specifically* control[ed] the modification of the franchises to improve their accessibility to the disabled." <u>Neff</u>, 58 F.3d at 1066. Based on this reasoning, the Fifth Circuit concluded that the franchisor in that case was not an operator even though the franchising agreement gave it "the right to set standards for building and equipment maintenance and to 'veto' proposed structural changes[.]" <u>Id.</u> at 1068.

Here, Lemmons has submitted evidence showing that, under the franchising agreement, Ace requires Berkeley Hardware to abide by all federal and state laws, including those pertaining to disability access. Opp'n Cabalo Dec. Ex. 1 at 32:16-37:19 and Exhibits 1 and 3. According to the testimony of Ace's corporate designee, Ace has the contractual right to terminate the franchising agreement if Berkeley Hardware fails to comply with this requirement. <u>Id.</u> at 35:2-37:17, 47:5-12.

The Court concludes that, while these contractual terms might provide an additional incentive to Berkeley Hardware to comply with federal and state laws, they do not grant Ace the "specific control" necessary to impose liability on it. Lemmons points to no evidence to show that Ace retained the authority under the agreement to dictate the physical layout of the store, or that otherwise participated in the alleged acts of discrimination against Plaintiff. In the absence of such evidence, the Court cannot conclude that Ace had control over the store such that it could ensure nondiscrimination against the disabled. <u>See</u> <u>Aikins v. St. Helena Hosp.</u>, 843 F. Supp. 1329, 1335 (N.D. Cal. 1994) (holding that an individual was not an "operator" because he "ha[d] no authority to enact or amend hospital policy" and thus was not "in a position to ensure nondiscrimination").

Accordingly, because Ace cannot be liable as an "operator" under the ADA, Defendants' motion for summary judgment as to Lemmon's Unruh Act claim against ACE is GRANTED, and

United States District Court
Northern District of California

1    Lemmon's motion for summary judgment as to the same is DENIED.[1]

2                                    **ii.      EQR**

3            EQR contends that it is a "successor owner" and that, as such, it cannot be held liable for

4    the prior owner's failure to comply with the ADA's design and construction provision.  As will be

5    discussed in section II.A.c.i., below, the Court is not persuaded by this argument.

6                         **c.      Denial of Public Accommodation**

7            As defined by the ADA, unlawful discrimination occurs when features of an

8    accommodation

9                          subject an individual or class of individuals on the basis of a
                           disability or disabilities of such individual or class, directly, or
10                         through contractual, licensing, or other arrangements, to a denial of
                           the opportunity of the individual or class to participate in or benefit
11                         from the goods, services, facilities, privileges, advantages, or
                           accommodations of an entity.
12

13   42 U.S.C. § 12182(b)(1)(A)(i).

14           A plaintiff can establish discrimination in violation of the ADA by showing that the

15   defendant violated the applicable accessibility standards set forth in the ADA Accessibility

16   Guidelines ("ADAAG").   Oliver v. Ralphs Grocery Co., 654 F.3d 903, 905 (9th Cir. 2011)

17   (citations omitted) ("If a particular architectural feature of a place of public accommodation is

18   inconsistent with the ADAAG, a plaintiff can bring a civil action claiming that the feature

19   constitutes a barrier that denies the plaintiff full and equal enjoyment of the premises in violation

20   of the ADA.").  These guidelines fall within three categories: (1) the "new construction"

21   provisions, which apply to public accommodations constructed after January 26, 1992; (2) the

22   "readily achievable" provisions, which apply to unaltered portions of buildings constructed before

23   January 26, 1992; and (3) the "alteration" provisions, which apply to post-January 26, 1992,

24   alterations to buildings that existed as of that date.  See Moeller v. Taco Bell Corp., 816 F. Supp.

25   2d 831, 847 (N.D. Cal. 2011).

26

27   _____

     [1] Because Lemmons' CDPA claim also is predicated on violations of the ADA, that claim also
28   fails as to ACE.

United States District Court
Northern District of California

1   Here, both parties agree that the store was built prior to 1992.  As such, Defendants cannot

2   be liable under the "new construction" provisions.

3   In her motion, Lemmons contends that the barriers in the store violate both the

4   "alterations" and the "readily achievable" provisions.

5                                    **i.      "Alteration" Provisions**

6   The ADA requires that any alterations made after January 26, 1992, to an existing building

7   be made "readily accessible to and useable by" individuals with disabilities "to the maximum

8   extent feasible[.]"  42 U.S.C. § 12183(a)(2).  An entity violates the ADA when it fails to comply

9   with the applicable ADAAG at the time of an alteration.  See 28 C.F.R. § 36 App. A (providing

10  that an existing "facility is subject to the alterations requirements and standards in effect at the

11  time of the alteration").

12  "Alteration" is not defined in the ADA, but it is defined in the ADAAG as follows:

13          [A]n alteration is a change to a place of public accommodation or a
            commercial facility that affects or could affect the usability of the
14          building or facility or any part thereof . . . Alterations include, but
            are not limited to, remodeling, renovation, rehabilitation,
15          reconstruction, historic restoration, changes or rearrangement in
            structural parts or elements, and changes or rearrangement in the
16          plan configuration of walls and full-height partitions. Normal
            maintenance, reroofing, painting or wallpapering, asbestos removal,
17          or changes to mechanical and electrical systems are not alterations
            unless they affect the usability of the building or facility.
18

19  28 C.F.R. § 36.402 & Appendix A.

20  "[T]he concept of 'usability' is central to determining whether an alteration has been

21  made[.]"  See, e.g., Rodriguez v. Barrita, Inc., — F. Supp. 2d —, Case No. 09-04057 RS, 2014

22  WL 31739, at *12 (N.D. Cal. Jan. 3, 2014).  Because the Ninth Circuit has not defined "usability,"

23  courts in this circuit frequently rely on the definition of "usability" employed by the Second

24  Circuit, which defines the term as having the effect of rendering a facility "materially new in some

25  sense," as opposed to "essentially preserv[ing] the status and condition of a facility[.]"  See id. at

26  *13 (quoting Roberts v. Royal Atlantic Corp., 542 F.3d 363, 370 (2d Cir. 2008) (internal quotation

27  marks omitted)).

28

United States District Court
Northern District of California

14

1

2

3

4

5

6

7

Lemmons has submitted evidence showing that the store was seismically retrofitted in 1997. Cabalo Dec., Ex. 8, Bill Carpenter Dep. at 48:18-53:2; Cabalo Decl., Ex. 9, Moore Dep. at 57:3-11; Cabalo Decl., Ex. 6, Solar Dep. at 49:22-50:8; Margen Decl. ¶¶ 5, 8, 9 & Ex. 3 at 00001, 00002, 00013. The retrofit required extensive construction work, including reconstruction of sections of the foundation; changes to the footings of the building; installation of rebar into parts of the basement floor and walls; wall framing; and opening a section of the roof to install steel beams for the seismic upgrades. Id.

8

9

10

11

12

13

14

This work falls squarely within the ADAAG's definition of alteration, which includes "changes or rearrangement in structural parts or elements." As such, Lemmons has met her burden to show that the retrofit constituted an alteration within the meaning of the ADA that triggered an obligation to make the altered portions of the store "readily accessible and usable by individuals with disabilities." Defendants' failure to remove the barriers at issue in order to make the store readily accessible to Lemmons following the 1997 retrofit therefore constitutes a violation of the ADAAG and the ADA.

15

16

In their opposition, Defendants make four arguments in an effort to preclude the entry of summary judgment in Lemmons' favor. None of them succeeds.

17

18

19

20

21

22

First, Defendants contend that the 1997 retrofit does not constitute an alteration under the ADA because it did not affect the usability of the facility, as it did not render the store new "in any sense." Opp'n at 14. Because Defendants point to no evidence or authority to support this contention, and because the Court already has concluded that Lemmons has shown that the retrofit falls squarely within the scope of the ADAAG's definition of "alteration" in light of the structural elements that it affected, this argument fails.[2]

23

24

25

26

27

28

[2] The ADA and the ADAAG do not indicate which party has the burden to prove that an "alteration" occurred, and the Ninth Circuit has not addressed the issue. The Court finds, however, that the burden-shifting framework adopted by the Second Circuit in Roberts v. Royal Atl. Corp., 542 F.3d 363, 371 (2d Cir.2008), is appropriate and therefore applies it here. Under that framework, "a plaintiff fulfills his or her initial burden of production by identifying a modification to a facility and by making a facially plausible demonstration that the modification is an alteration under the ADA. The defendant then bears the burden of persuasion to establish that the modification is in fact not an alteration." Id. Here, Defendants have not met their burden to

1    Second, Defendants argue that, even if the retrofit constitutes an alteration, a genuine issue

2    of material fact exists with respect to whether the prior owner of the store was relieved from

3    having to make any ADA-related upgrades at the time of the retrofit.[3]  Defendants contend that the

4    only "reasonable inference" that the Court can draw from Exhibit 3 to the Margen Declaration,

5    which appears to contain various permits and transactional documents pertaining to the retrofit, is

6    that "a hardship exemption was granted to the prior owner," which "exempted the prior owner's

7    obligation to upgrade."  Id. at 15.

8    This argument fails for two reasons.  First, Defendants cite to no authority establishing

9    that an entity can be exempted from making required modifications under the ADA by a hardship

10   exemption.  While a hardship exemption can excuse an entity from making accessibility

11   modifications required by California law, the effect of such an exemptions is not clear in the

12   context of the ADA.   Second, even assuming that a hardship exemption could excuse Defendants

13   from making the ADA modifications in question, Defendants have not met their burden to

14   establish the existence of such an exemption.  See N.L.R.B. v. Kentucky River Cmty. Care, Inc.,

15   532 U.S. 706, 711 (2001) (noting "the general rule of statutory construction that the burden of

16   proving justification or exemption under a special exception to the prohibitions of a statute

17   generally rests on one who claims its benefits").  Under California law, a failure to make required

18   accessibility modifications can be excused only where "the violator has been affirmatively

19   directed, or given formal approval, by an enforcing agency to construct premises in a certain way."

20   Donald v. Café Royale, Inc., 218 Cal. App. 3d 168, 176 (1990); see also Cal. Health & Safety

21   Code § 19957.  Defendants point to no evidence showing that they received formal approval to

22   effectuate the retrofit without making any required accessibility modifications.  The only

23   admissible evidence that Defendants cite to support the theory that the retrofit was subject to an

24   exemption is Exhibit 3, which contains fifteen pages of photocopies from the City of Berkeley

25   Building Department.  As to these, Defendants argue that the absence of any reference to

26

27

show that the retrofit was not an alteration.

28   [3] This is because EQR acquired the building after the retrofit had taken place.

United States District Court
Northern District of California

1    accessibility modifications constitutes proof that the City of Berkeley had exempted Berkeley

2    Hardware from making them.  Defendants do not identify any of these pages as containing a

3    formal approval or anything else resembling an exemption.  On this speculative record, the Court

4    cannot conclude that the purported exemption exists.  See Keenan v. Allan, 91 F.3d 1275, 1279

5    (9th Cir. 1996) (holding that the non-moving party must "identify with reasonable particularity the

6    evidence that precludes summary judgment" and that it is not the duty of the district court to "to

7    scour the record in search of a genuine issue of triable fact").[4]

8         Third, Defendants contend that Lemmons' testimony regarding the treatment she received

9    at the store is not credible, as some of the evidence on the record shows that employees at the store

10   regularly provided assistance to her.  Defendants cite Sherman Oaks Med. Arts Ctr., Ltd. v.

11   Carpenters Local Union No. 1936, United Bhd. of Carpenters & Joiners of Am., 680 F.2d 594,

12   598 (9th Cir. 1982), for the proposition that Lemmons' motion must be denied where, like here, an

13   "issue of credibility raise[s] issues of fact."  Opp'n at 12.

14        This argument is unpersuasive.  The testimony that Defendants contend is not credible is

15   completely irrelevant to the question of whether the 1997 retrofit constituted an alteration.  That is

16   because the treatment that Lemmons received at the store, or Lemmons' perception of such

17   treatment, is not an element for establishing a violation under the ADA for failure to comply with

18   the "alteration" provisions, which focus on the remediation of physical (as opposed to policy-

19   based) accessibility barriers.  And, even if such evidence were relevant, the Court cannot engage

20   in credibility determinations when resolving a motion for summary judgment.  Defendants'

21   reliance on Sherman Oaks is misplaced, because that case is distinguishable.  There, the court held

22   that summary judgment was not appropriate "where motive and intent play a leading role in a

23   determination of liability, and where the proof is largely in the hands of the defendants."  Sherman

24   Oaks Med., 680 F.2d at 598.  Here, motive and intent play no role in the determination of whether

25   Defendants are liable for failing to comply with the "alteration provisions" of the ADAAG.

---

27   [4] Defendants also proffer the inadmissible, double hearsay statement of the former building owner
     that she had been granted a hardship exemption by the City.  Even were it admissible, however,
28   this evidence still would not meet Defendants' burden.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Finally, Defendants contend that, even if the retrofit constituted an alteration, EQR cannot

2    be held liable for any violations of the ADA's design and construction provisions committed by

3    the store's prior owners.  This argument misses the point.  The issue before the Court is not

4    whether Defendants can be held liable for violations of the ADA's *design and construction*

5    provisions, which are governed by 42 U.S.C. § 12183(a)(1).  Rather, the issue is whether

6    Defendants can be held liable for violations of the ADA's *alterations* provisions, which are

7    governed by 42 U.S.C. § 12183(a)(2).  For this reason, the two cases that Defendants cite, which

8    address to the applicability of the ADA's design and construction provisions to subsequent

9    owners, are inapposite.  See Rodriguez v. Investco, L.L.C., 305 F. Supp. 2d 1278, 1282 (M.D. Fla.

10   2004) (discussing scope of 42 U.S.C. § 12183(a)(1) and holding that "[i]n regard to section

11   12183(a)(1) of the ADA, it is plain that that provision does not create liability that runs in rem");

12   Paulick v. Ritz-Carlton Hotel Co., LLC, 2011 WL 6141015, at *2 (N.D. Cal. Dec. 9, 2011) ("As a

13   general rule, subsequent owners, lessees, lessors, and operators of a public accommodation who

14   did not participate in designing and constructing the facility for first occupancy are not liable

15   under the ADA for any of its *design and construction defects*[.]") (emphasis added).

16       The Ninth Circuit has not addressed the question of whether a subsequent owner can be

17   held liable for violations of the ADA's alteration provisions.  The Ninth Circuit *has* held,

18   however, that only a *current* owner, lessee, lessor, or operator of a noncompliant public

19   accommodation can be liable under the ADA for design and construction discrimination under

20   § 12183(a)(1).  Lonberg v. Sanborn Theaters Inc., 259 F.3d 1029, 1036, as amended on denial of

21   reh'g and reh'g en banc, 271 F.3d 953 (9th Cir. 2001) (holding that an architect who violated the

22   ADA's design and construction provisions but did not have control of the building at the time of

23   the lawsuit could not be held liable for such violations).  Though the Ninth Circuit made this

24   determination in the context of design and construction, the reasoning underlying that

25   determination also is applicable in the context of alterations.  The court reasoned that, because the

26   ADA actions are limited to injunctive relief, such relief can be "meaningful" only "against the

27   person currently in control of the building."  Id.  Otherwise, if ADA claims could only be brought

28

18

against the person or entity that committed the violations at issue but that no longer has control of the facility, then the ADA "would create liability in persons against whom there is no meaningful remedy provided by the statute."[5]  Id.

Based on the reasoning in Lonberg, it is clear that the ADA must be construed to permit the assertion of claims for violations of the ADA's alteration provisions against the *current* "owner, lessee, lessor, or operator" of the store — in other words, the person or entity "currently in control of the building."[6]  Id.  Here, it is undisputed that EQR is the current owner of the building.  Accordingly, EQR can be held liable for the ADA violations at issue.

### ii.       "Readily Achievable" Provisions

The "readily achievable" provisions apply to existing buildings that have not undergone alterations.  See Moeller, 816 F. Supp. 2d at 848; see also 42 U.S.C. § 12182(b)(2)(A)(iv) (providing that, in the context of existing facilities, discrimination includes "a failure to remove architectural barriers . . . where such removal is readily achievable").  In such buildings, architectural barriers must be removed where it is "readily achievable" to do so.  42 U.S.C. § 12182(b)(2)(A)(iv).  The removal of barriers is "readily achievable" when it is "easily accomplishable and able to be carried out without much difficulty or expense."  Id. § 12181(9).  Factors relevant to this determination include:

---

[5] The Court recognizes that the court in Paulick, Case No. 10-4107, 2011 WL 6141015, at *7 (N.D. Cal. Dec. 9, 2011), relied on Lonberg in reaching the conclusion that current owners or operators could *not* be held liable for violations of the ADA's design and construction provisions if such owners or operators were not involved in the violations.  This Court finds, however, that the Paulick court's interpretation and application of Lonberg is incorrect, because the Longberg court did not limit ADA liability to owners or operators who participated in ADA violations.  To the contrary, one point of the opinion was to emphasize that, in order to provide meaningful relief under the ADA, current owners or operators must be subject to ADA liability even for violations they did not commit.  Lonberg, 259 F.3d 1029 at 1036 ("after the noncompliant building has already been built, which is the case here, injunctive relief is only meaningful against the person *currently* in control of the building" (emphasis added)).

[6] This holding is in harmony with the way in which courts in this district have interpreted the applicability of California accessibility laws.  See, e.g., Hodges v. El Torito Restaurants, Inc., Case No. 96-2242 VRW, 1998 WL 95398, at *4 (N.D. Cal. Feb. 23, 1998) ("[T]he best way to effectuate the goals of California's accessibility laws is to hold the current owners of buildings liable for existing violations.").

(A) the nature and cost of the action needed under this chapter;

(B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;

(C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and

(D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

Id. at § 12181(9).

The entity that owns, operates, or leases such a building carries the burden of showing that the removal of each of the barriers at issue would not be readily achievable.  See Molski v. Foley Estates Vineyard & Winery, LLC, 531 F.3d 1043, 1048 (9th Cir. 2008) (holding that defendant "bore the initial burden of production on the question of ready achievability" because it had "the best access to information regarding" that issue).  Even if an entity demonstrates that the removal of an architectural barrier is not readily achievable, it nevertheless discriminates against persons with disabilities if it fails "to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable." Id. § 12182(b)(2)(A)(v).

Here, the Court has concluded that Lemmons has established a violation of the "alterations" provisions of the ADAAG with respect to Berkeley Hardware and EQR, and so the "readily achievable" provisions do not apply.  Even if they did, however, Defendant has done nothing to meet its burden of showing that the required alterations to the facility were not "readily achievable."  Defendant has submitted no evidence regarding any of the factors identified in § 12182(9).  At the hearing on these motions, Defendants acknowledged that they had not even produced financial information in discovery regarding two of their group, much less introduced such evidence in connection with these motions.  Similarly, Defendants have introduced no evidence regarding the relationship of the costs of repair to the total revenue of the hardware store,

20

1   its total operating costs, or the "impact otherwise of such action upon the operation of the facility."

2   Defendants are not entitled to judgment on the grounds that any necessary modifications

3   were not "readily achievable."

4   **2.    Damages**

5   Having concluded that Lemmons has established a violation of the ADA, which satisfies

6   the first element of a claim for damages under the Unruh Act, the Court now turns to the question

7   of whether Lemmons has established the second element of that claim.

8   Damages for violations of the Unruh Act are governed by California Civil Code § 52,

9   which provides, in relevant part:

> Whoever denies, aids or incites a denial, or makes any
> discrimination or distinction contrary to Section 51, 51.5, or 51.6, is
> liable for each and every offense for the actual damages, and any
> amount that may be determined by a jury, or a court sitting without a
> jury, up to a maximum of three times the amount of actual damage
> but in no case less than four thousand dollars ($4,000), and any
> attorney's fees that may be determined by the court in addition
> thereto, suffered by any person denied the rights provided in Section
> 51, 51.5, or 51.6.

15   Cal. Civ. Code § 52(a).[7]

16   In order to recover damages under section 52 in connection with a construction-related

17   accessibility Unruh Act claim premised on a violation of the ADA, a plaintiff must show that she

18   "experienced difficulty, discomfort, or embarrassment as a result of personally encountering the

19   ADA violation." <u>Thomas Mundy v. Pro-Thro Enterprises</u>, 192 Cal. App. 4th Supp. 1, 5 (Cal. App.

20   Dep't Super. Ct. 2011).  This is because such claims for damages are governed by California Civil

21   Code § 55.56.[8]  Under this statute, a plaintiff may recover minimum statutory damages for "each

22   particular occasion that the plaintiff was denied full and equal access," but "not upon the number

23   of violations of construction-related accessibility standards identified at the place of public

24   accommodation where the denial of full and equal access occurred."  <u>Id.</u> § 55.56(e).

25   Here, Lemmons has submitted evidence showing that she suffered difficulty, discomfort,

---

[7] "Actual damages" constitute "special and general damages."  Cal. Civ. Code § 52(h).

[8] For section 55.56 to apply, a claim must have been filed later on or after January 1, 2009.  Here, Lemmons filed her complaint after that date, in 2012.

United States District Court
Northern District of California

1    or embarrassment as a result of having encountered the barriers at issue, which satisfies her burden

2    of production.  See Lemmons Decl. ¶¶ 1-26.

3         In their opposition, Defendants point to evidence showing that Lemmons went back to the

4    store on multiple occasions despite having encountered the barriers at issue and despite having

5    access to other stores in her neighborhood, and that she never complained to Berkeley Hardware

6    or EQR about the treatment she received.  Defendants contend that this evidence undermines the

7    notion that Lemmons suffered difficulties, discomfort, or embarrassment.  They also point to the

8    testimony of several store employees, which shows that they provided assistance to Lemmons on

9    multiple occasions during her shopping trips to the store.

10        The Court concludes that Defendants have failed to point to sufficient evidence to raise a

11   genuine issue of material fact with respect to this element.  The question of whether a plaintiff

12   suffered difficulties, discomfort, or embarrassment turns on evidence that necessarily is highly

13   subjective.  Evidence pertaining to the number of times she visited the store, to whether she had

14   access to other stores, or whether she complained to management has very little relevance, if any,

15   to the question at hand, because none of these facts are mutually exclusive with experiencing

16   difficulties, discomfort, or embarrassment.   This is particularly true in light of Lemmons'

17   explanations for why she continued going to the store (because it had a larger variety of items than

18   other stores and was more conveniently located) and why she chose not to complain (because she

19   believed she would receive worse treatment in the future).

20        Accordingly, the Court concludes that Lemmons has met her burden to establish that she is

21   entitled to damages in connection with her Unruh Act claim.  Because Lemmons has agreed to

22   limit her recovery with respect to each of the visits at issue to the statutory minimum of $4,000 per

23   visit, and because her agreement to so limit her damages removes any factual dispute as to the

24   appropriate amount of those damages, Lemmons shall recover a total of $52,000 from Berkeley

25   Hardware and EQR.  See Lemmons' Mot. at 24.

26

27

28

United States District Court
Northern District of California

1

**B.      Defenses to the Unruh Act Claim**

2

**1.      Statute of Limitations**

3         Defendants move for summary judgment on Lemmons' Unruh Act claim on the ground

4  that this claim is barred by the applicable statute of limitations, which is two years.  See Cal. Civ.

5  Code § 335.1 (providing two-year statute of limitations period for personal injury actions).  Under

6  Defendants' statute-of-limitations theory, the 13 visits at issue are part of one continuing violation

7  that began in 2004, which is when Lemmons first became aware of the barriers at issue.  Because

8  Lemmons did not file this action until July 26, 2012, Defendants argue that the claim is time-

9  barred and that the statute of limitations cannot be tolled based on the continuing violations

10  doctrine.

11         Lemmon responds that the notion that all 13 incidents are part of single violation must be

12  rejected, because the Unruh Act entitles her to damages for each access violation she encountered,

13  which establishes that each access violation is a separate incident that triggers its own statute of

14  limitations.  She also contends that none of the 13 incidents at issue are barred by the applicable

15  two-year statute of limitation, because each incident took place within two years of the filing of

16  the complaint in this case.[9]

17         The Court concludes that each of the 13 visits at issue constitute a separate violation of the

18  Unruh Act.  First, the plain language of the Act provides that a person who discriminates in

19  violation of the Act will be liable "based on *each particular occasion* that the plaintiff was denied

20  full and equal access, and not upon the number of violations of construction-related accessibility

21  standards identified at the place of public accommodation where the denial of full and equal

22  access occurred."  See Cal. Civ. Code § 55.56(e); see also Cal. Civ. Code § 52(a) (providing that a

23  plaintiff may recover damages for an Unruh Act violation for "each and every offense").  Second,

24  courts in California consider each particular occasion or visit that involved a discriminatory access

25  barrier to be a separate actionable Unruh Act violation.  See, e.g., McCune v. Singh, Case No.

26  _____

27  [9] The 13 incidents occurred on: January 16, 2011; May 1, 2011; May 7, 2011; August 21, 2011; October 9, 2011; November 17, 2011; November 23, 2011; December 16, 2011; December 30, 2011; January 16, 2012; February 3, 2012; July 20, 2012; and July 21, 2012.  ECF No. 82, Ex. 1.

28

United States District Court
Northern District of California

1    2:10-CV-02207 JAM, 2012 WL 2959436, at *5 (E.D. Cal. July 19, 2012).  Because Defendants do

2    not point to any authority establishing that the visits at issue must be treated as a single Unruh Act

3    violation, the Court finds that it would be inappropriate to lump them together.[10]

4         In light of this conclusion, none of the 13 incidents are barred by the two-year statute of

5    limitations, because each incident occurred within two years of the filing of the complaint.

6         Accordingly, Defendant's motion for summary judgment is DENIED as to this defense.

7              **2.    Avoidable Consequences Doctrine**

8         Defendants also move for summary judgment on Lemmons' Unruh Act claim on the

9    ground that this claim is barred by the "avoidable consequences doctrine."  Defendants contend

10   that Lemmons had a duty to limit her visits to the store in light of the barriers she encountered

11   starting in 2004 so as to mitigate her damages.  Defendants emphasize that Lemmons never

12   complained to any store employee about the barriers, which implies that Lemmons continued to

13   visit the store in order to receive a higher damages award.

14        Lemmons responds that the doctrine does not bar her claim and explains that the reason

15   why she continued to shop at the store was that she store was conveniently located and carried a

16   superior selection of products.  She also contends that the reason why she did not complain about

17   the barriers was that she felt that her complaints would be futile and that she would receive worse

18

19   [10] All of the cases that Defendants cite in support of the notion that the Unruh Act claim is time-
     barred are inapposite, because they address the applicability of the statute of limitations to claims
20   based on the improper design and construction of a facility.  The improper design and construction
     of a facility constitutes a single incident of discrimination.  See United States v. Taigen & Sons,
21   Inc., 303 F. Supp. 2d 1129, 1139 (D. Idaho 2003) (holding that "the continuing violations doctrine
     is applicable in *design and construction* cases brought pursuant to the Fair Housing Act")
22   (emphasis added); Moseke v. Miller & Smith, Inc., 202 F. Supp. 2d 492, 507 (E.D. Va. 2002)
     (holding that continuing violation doctrine does not apply to Fair Housing Act claim for *design*
23   *and construction* defect); Frame v. City of Arlington, 575 F.3d 432, 438 (5th Cir. 2009), opinion
     withdrawn and superseded on reh'g, 616 F.3d 476 (5th Cir. 2010) on reh'g en banc, 657 F.3d 215
24   (5th Cir. 2011) (holding that "the concept of a continuing violation plainly is inconsistent with our
     ultimate holding in this case—which is that the *noncompliant construction* of a sidewalk
25   constitutes the triggering accrual event for statute of limitations purposes") (emphasis added);
     Garcia v. Brockway, 526 F.3d 456, 463 (9th Cir. 2008) (holding that the continuing violation
26   doctrine does not apply to a "failure to properly *design and construct*" because that constitutes a
     "single instance of unlawful conduct") (emphasis added).  Here, each of the 13 visits is separately
27   actionable as a discriminatory act that violates the Unruh Act.

28

1    treatment if she complained.

2          The Court concludes that Defendants have failed to meet their burden to show that the

3    avoidable consequences doctrine bars Lemmons' claim.  None of the authorities that Defendants

4    cite establishes that the doctrine is applicable to violations of the Unruh Act.  The only case that

5    involves the Unruh Act is Angelucci v. Century Supper Club, 41 Cal.4th 160, 178 (2007).  There,

6    the California Supreme Court expressed a concern in dicta with respect to the "the potential for

7    abusive litigation being brought under the [Unruh] Act" in the form of the making of repeated

8    "visits to defendant's business establishment in order to increase the statutory damages they could

9    seek for multiple violations of the Act."  Id.  The court nevertheless concluded that

10                these concerns do not supply a justification for our inserting
11                additional elements of proof into the cause of action defined by the
                  statute. It is for the Legislature (or the People through the initiative
12                process) to determine whether to alter the statutory elements of
                  proof to afford business establishments protection against abusive
13                private legal actions and settlement tactics.

14   Id. at 179.  The court then declined "to review defendant's potential equitable defenses or to

15   examine any constitutional limitations on damage awards that are based upon violation of a

16   statute."  Id.

17         Having concluded that there is no authority for applying the avoidable consequences

18   doctrine in an Unruh Act case, the court declines to apply it here.  Accordingly, Defendants'

19   motion for summary judgment is DENIED as to this defense.

20         **B.      CDPA**

21         The California Disabled Persons Act, which is codified at California Civil Code section 54,

22   provides that:

23                Individuals with disabilities or medical conditions have the same
                  right as the general public to the full and free use of the streets,
24                highways, sidewalks, walkways, public buildings, medical facilities,
                  including hospitals, clinics, and physicians' offices, public facilities,
25                and other public places.

26   Cal. Civ. Code § 54(a).

27         Unlike claims for disability discrimination brought under the Unruh Act, a plaintiff

28

United States District Court
Northern District of California

1   asserting a claim under section 54 need not establish intent.  <u>Hankins v. El Torito Restaurants,</u>

2   <u>Inc.</u>, 63 Cal. App. 4th 510, 520 (1998) ("In contrast to the Unruh Civil Rights Act, a violation of

3   section 54.1(a) does not require intent.").

4        Damages for violations of section 54 are governed by California Civil Code § 54.3, which

5   provides, in relevant part:

6           (a) Any person or persons, firm or corporation who denies or
        interferes with admittance to or enjoyment of the public facilities as

7           specified in Sections 54 and 54.1 or otherwise interferes with the
        rights of an individual with a disability under Sections 54, 54.1 and

8           54.2 is liable for each offense for the actual damages and any
        amount as may be determined by a jury, or the court sitting without

9           a jury, up to a maximum of three times the amount of actual
        damages but in no case less than one thousand dollars ($1,000), and

10          attorney's fees as may be determined by the court in addition thereto,
        suffered by any person denied any of the rights provided in Sections

11          54, 54.1, and 54.2. "Interfere," for purposes of this section, includes,
        but is not limited to, preventing or causing the prevention of a guide

12          dog, signal dog, or service dog from carrying out its functions in
        assisting a disabled person.

13  Cal. Civ. Code§ 54.3(a).

14       A plaintiff may recover minimum statutory damages even if no actual damages have been

15  sustained so long as she was denied equal access in violation of section 54.  <u>See</u> <u>Donald v. Cafe</u>

16  <u>Royale, Inc.</u>, 218 Cal. App. 3d 168, 177 (1990).

17       Lemmons also moves for summary judgment on her claim under the CDPA.  Because the

18  Court has concluded that Lemmons is entitled to summary judgment on her claim under the Unruh

19  Act with respect to Berkeley Hardware and EQR, her motion for summary judgment as to these

20  defendants must be DENIED, because she cannot recover under both statutes.  <u>See</u> Cal. Civ. Code

21  § 54.3 (providing that a "person may not be held liable for damages pursuant to both [the CDPA]

22  and Section 52 [the Unruh Act] for the same act or failure to act").  Her motion also must be

23  DENIED as to Ace, since her claim is predicated on violations of the ADA and Ace cannot be

24  held liable for such violations.

25  **IV.     CONCLUSION**

26       Lemmons' motion for summary judgment is resolved as follows:

27       –     Lemmons is entitled to summary judgment on her Unruh Act claims against

28

*(Left margin: United States District Court / Northern District of California)*

Berkeley Hardware and EQR.  She shall recover $52,000 from these defendants.

–      Lemmons' motion for summary judgment on her Unruh Act claim against Ace is DENIED.

–      Lemmons' motion for summary judgment as to her CDPA claim is DENIED as to all defendants.

Defendants' motion for summary judgment is GRANTED only with respect to Ace.  Ace is entitled to summary judgment as to all claims asserted against it to the extent that such claims are premised on violations of the ADA.  The motion is otherwise DENIED.

**IT IS SO ORDERED.**

Dated:  July 3, 2014

_____
JON S. TIGAR
United States District Judge