UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PORTIA LEMMONS,<br><br>    Plaintiff,<br><br>v.<br><br>ACE HARDWARE CORPORATION, et al.,<br><br>    Defendants. | Case No. 12-cv-03936-JST<br><br>**ORDER GRANTING IN PART MOTION FOR ATTORNEY FEES**<br><br>Re: Dkt. No. 122 |

Before the Court is Plaintiff's motion for attorney fees, litigation expenses, and costs totaling $272,912 in this action for discrimination on the basis of disability relating to the Berkeley Ace Hardware store located in Berkeley, CA.

I.  **BACKGROUND**

    A.  **Factual Background**

Plaintiff Portia Lemmons brought this action against Defendants Ace Hardware Corporation ("Ace"), Berkeley Hardware, Inc., and EQR-Acheson Commons Limited Partnership ("EQR") for claims arising out of Defendants' purported denial of access to disabled persons at the Berkeley Ace Hardware store in Berkeley, California ("the store"). Complaint, ECF No. 1. Lemmons has lived with cerebral palsy since birth and claimed that she had encountered numerous barriers that prevented her from fully accessing the store during the course of visits over the last several years. ECF No. 107 at 2-4.

Ace and Berkeley Hardware have a franchising agreement that permits Berkeley Hardware to operate the store while using the "Ace" name. Id. at 1. EQR owns the building in which the

store is located and leases it to Berkeley Hardware. Id. Defendants insist that EQR plans to tear down the building that houses the store in the near future and that the store plans to relocate to a new space. ECF No. 130 at 7. As of the date of this order, the store remains in operation in the EQR building. ECF No. 122 at 4.

### B.  Procedural History

The Defendants entered into a court-enforceable settlement agreement with Lemmons. The parties did not reach any agreement as to damages or attorney's fees. Id.

The parties subsequently brought cross-motions for summary judgment. ECF No. 64, 80. The Court granted summary judgment in favor of Plaintiff that the Defendants Berkeley Hardware and EQR-Acheson Commons Limited Partnership ("EQR") were liable for $52,000 in damages under the Unruh Act for the "difficulties, discomfort, or embarrassment" she suffered during her visits to the store. ECF No. 107 at 21-22. Lemmons had agreed to limit her recovery to the statutory minimum of $4,000 per visit to the store. Id. at 22. The Court found Lemmons could not recover for her California Disabled Persons Act claim because she had already recovered under the Unruh Act and plaintiffs are not permitted to recover under both statutes. Id. at 25-26.

The Court granted summary judgment in favor of Defendant Ace Hardware, concluding that Ace could not be held liable as an "operator" under the ADA because Ace, as a franchisor, lacked "specific control" over the store. Id. at 11-12.

### C.  Jurisdiction

The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367.

## II.  LEGAL STANDARD

Recognizing the "need for private lawsuits to enforce disabled access," California disability laws and the Americans with Disabilities Act both provide for fee shifting to successful plaintiffs. Blackwell v. Foley, 724 F. Supp. 2d 1068 at 1075 (N.D. Cal 2010). "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any

action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." Cal. Civ. Proc. Code § 1021.5. California Civil Code § 55 also provides that the prevailing party in an action for injunctive relief under California's disability laws "shall be entitled to recover reasonable attorney's fees."

"California courts, like their federal counterparts, utilize the lodestar (or 'touchstone') approach to determine a proper fee award to a prevailing plaintiff in a civil rights law suit." Muniz v. United Parcel Serv., Inc., 738 F.3d 214, 222 (9th Cir. 2013). Under the lodestar, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Courts "should exclude from this initial fee calculation hours that were not reasonably expended." Id. at 434 (internal quotation and citation omitted). "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." Id. If "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." Id. at 436.

### III. ANALYSIS

#### A. Hourly Rate

Plaintiff's request that the "reasonable hourly rate[s]" used by the Court for calculating the lodestar in this case should be as follows: "Paul L. Rein, $645; Celia McGuinness, $550; Catherine 'Cat' Caballo, $475; senior paralegal Aaron Clefton, $190; paralegal Emily O'Donohoe,

3

$155, and paralegal Holly Jaramillo, $135." ECF No. 122 at 12.  In support of their proposed hourly rates, Plaintiff's counsel point to their "education, experience, and expertise in disability rights law," declarations provided by other attorneys practicing in the field, and other decisions in this District awarding similar hourly rates for attorneys practicing in the Rein Law Office. Although Defendants take issue with the reasonableness of the hours expended by Plaintiff's counsel on the litigation, they do not appear to contest the proposed hourly rates.  Nonetheless, the Court will satisfy itself that Plaintiff's proposed hourly rate is reasonable before moving on to evaluate the reasonableness of the hours expended.

When determining a reasonable hourly rate for a lawyer's service, "the lodestar looks to the prevailing market rates in the relevant community." Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 551 (2010) (internal quotations and citations omitted).  "The burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984).

Rein has forty-five years of litigation experience, including forty years of disability representation, during which time he worked on many cases that achieved substantial victories for disabled plaintiffs.  Cabalo has thirteen years of practice as a litigator who has practiced with the Rein firm in the field of disability law for the last five years.  McGuinness has twenty-four years of litigation experience and has practiced with the Rein firm for the past six years.  Plaintiff's counsel has provided charts documenting orders by courts in this District, which have calculated fees for other attorneys and paralegals with similar amounts of litigation experience using hourly rates similar to or greater than those requested here.  ECF No. 122 at 18-20.  This evidence is not disputed.

Furthermore, Plaintiff's counsel has shown that other judges in this District have approved

4

payments to these same lawyers using hourly rates either identical to or similar to the rates currently sought. Earlier this year, Judge Seeborg noted that, in the prior fifteen months, Rein's $645 per hour rate had been approved by "four different judges in this district . . . in light of Rein's skill, reputation, and extensive experience." Rodriguez v. Barrita, Inc., No. 09-04057-RS, 2014 WL 2967925 at *2 (N.D. Cal July 1, 2014) (citing Hernandez v. Grullense, No. 12-cv-03257-WHO, 2014 WL 1724356 at *5 (N.D. Cal. April 30, 2014), Moralez v. Whole Foods Mkt., Inc., No. 12-01072-CRB, 2013 WL 3967639 at *4 (N.D. Cal. July 31, 2013); Cruz v. Starbucks Corp., No. 10–01868-JCS, 2013 WL 2447862 at *5 (N.D. Cal. June 5, 2013); Delson v. CYCT Mgmt. Grp., Inc., No. 11-03781-MEJ, 2013 WL 1819265 at *5 (N.D. Cal. Apr. 30, 2013)).

Judge Seeborg also approved compensating Cabalo at an hourly rate of $425 per hour in that litigation. Rodriguez, 2014 WL 2967925 at *2. Although Cabalo requests $475 per hour in the current motion, the Court concludes that an increase is appropriate. Cabalo acted as lead attorney in this matter. The charts provided by Plaintiff's counsel indicate that, in the last several years, other judges in this District have approved hourly rates within this range for plaintiffs' attorneys with a similar amount of litigation experience. ECF No. 122 at 19. Finally, as already noted, Cabalo's hourly rate is unopposed by Defendant.

Judge Breyer has previously approved a rate of $495 per hour for McGuinness, who now seeks an hourly rate of $550. Moralez, 2013 WL 3967639 at *3. The Court finds the $550 hourly rate now sought by McGuinness is reasonable, in light of the rates approved by other judges in this District over the last several years for plaintiffs' attorneys with similar amounts of litigation experience. ECF No. 122 at 19-20. McGuiness's requested rate is also unopposed.

Lastly, the Court finds the hourly rates requested for the work done by the firm's paralegals are reasonable. Judge Breyer has previously approved compensating Clefton at a rate of $175 an hour, noting that two other judges in the District had compensated Clefton at that rate. In early 2013, Judge James reasoned that the $175 rate was an appropriate adjustment from the

5

$165 hourly rate courts had approved for Clefton in 2010 and 2011. Delson, 2013 WL 1819265 at *5 (N.D. Cal. Apr. 30, 2013). The Court finds that the $190 rate is appropriate for Clefton, given his extensive experience, the rates approved for other paralegals by courts in this District, and the fact that his requested hourly rate is unopposed. ECF No. 122 at 20. The Court similarly concludes that the hourly rate requested for the work of the firm's other two paralegals is appropriate given the prevailing rates in the community. Id.

The Court finds that Plaintiff's counsel has established that the lodestar should be calculated using the hourly rates they have requested.

### B. Hours Reasonably Expended

Defendants principally contest the reasonableness of the number of hours billed by Plaintiff's counsel. Defendants contend that Plaintiff's counsel: 1) billed excessively for internal meetings and conferences; 2) billed excessively on particular motions; 3) billed for an ultimately unsuccessful claim against Ace Hardware; and 4) billed for services performed on behalf of deceased plaintiff Bertha Johnson. Defendants ask that the Court cut Plaintiff's requested fees by half "across the board" in light of the "excessive and redundant billing." ECF No. 130 at 11.

#### 1) Entries for Meetings

Defendants argue that Plaintiff's counsel billed an unreasonable number of internal meetings, comprising in Defendants' calculation a total of $39,048.00 in fees over 259 separate entries. Defendants have compiled the hours billed for such meetings into a single spreadsheet, submitted as Exhibit H to their opposition. ECF No. 130-8. Additionally, Defendants note that many of these meetings were of short duration, such as .1 hour or .2 hour increments--six or twelve minutes. The practice of billing for many short meetings has been criticized by other judges in this District as having the effect of potentially inflating a fees award. See, e.g. Hernandez, 2014 WL 1724356, at *8-9; Cruz v. Int'l Collection Corp., No. 08-00991-JF (RS), 2010 WL 2509988, at *4 (N.D. Cal. June 17, 2010).

6

Although the Court has approved the substantial hourly rates requested by Plaintiff's counsel, it has done so based on the attorneys' experience and expertise in disability litigation. This same expertise undercuts the reasonableness of some of their hours. "One of the trade-offs of being an expert in a specific filed of law is the expectation that tasks will be completed with greater efficiency because the knowledge base and resources have already been well-established." Delson v. CYCT Mgmt. Grp., Inc., No. C 11-03781 MEJ, 2013 WL 1819265, at *8 (N.D. Cal. Apr. 30, 2013). The Court knows that co-counsel sometimes need to strategize. But lawyers who are experts in the field of disability litigation, working at a small firm that exclusively handles that kind of work, should not need to bill 259 separate entries for strategizing. "The Ninth Circuit has approved of reductions in fees for unnecessary and duplicative intra-office conferences," and other courts in this District have "previously been critical of excessive conferencing by Rein Law." Hernandez, 2014 WL 1724356 at *10. Compounding these concerns is that some entries lack any specificity, such as "Meet w/ co-co re: pending issues" or "Strategize w/ staff re current case issues," which make such review more difficult and cause the Court some concern. ECF No. 130-8 at 3, 5.

Because the Court finds that Defendants' criticisms of the excessive nature of Plaintiff's counsel's billing for internal meetings are valid, it will exercise its discretion to reduce the $39,048.00 that Defendants characterize as having been billed for time spent on internal meetings by 50%, awarding $19,524.00 for these entries.

**2)   Summary Judgment Motions**

Defendants contend that Plaintiff's counsel billed an excessive number of hours on motions practice, including the summary judgment proceedings, administrative motions, and the current motion for fees. Defendants first object to the 102.8 hours they have classified as having been billed for the summary judgment proceedings, ECF No. 130-7, claiming that many of the arguments made is Plaintiff's opposition to Defendants' cross-motion overlap with arguments

7

made in Plaintiff's affirmative motion. The Court agrees the time billed for these motions was substantial. But Defendants' themselves created some of these costs by filing affirmative motions for summary judgments on claims where summary judgment was ultimately granted against them.

The Court also notes that Plaintiff's well-drafted and ultimately-successful summary judgment motion resulted in a lower total amount of fees by bringing the litigation to an end without the need for a trial. Any concerns the Court might have regarding the amount of time Plaintiff's counsel have billed for that motion are counterbalanced by this fact. In the same vein, the Court notes that Plaintiff also compromised on certain issues of injunctive relief and agreed to limit her damages claim, decisions that also prevented the need for a trial and lowered the amount of fees. The Court finds these hours were reasonably expended.

### 3) Fee Motions

Defendants object to the number of hours Plaintiff's counsel spent preparing the present attorney's fees motion. Defendants note that the motion is "nearly identical" to a motion the Rein firm submitted in Gerardo Hernandez v. Taqueria El Grullense, 12-cv-3257-WHO. Defendants include the fees motion from that case as Exhibit L. ECF No. 130-12. Defendants also call the Court's attention to the fee decision issued in Hernandez, wherein Judge Orrick observed that "Judges in this District have, on several occasions, criticized the fees sought by Rein Law for work on re-purposed fees motions," and deducted $6,276 of the $16,474 requested relating to this briefing. 2014 WL 1724356, at *13 (collecting cases). The Court has compared the motion filed in Hernandez and the opening brief filed herein and finds many sections regarding the statutes and public policies at issue do overlap substantially. The opening brief does not appear to have required substantial time to draft in light of Rein Law's ability to use a template motion. The Court will therefore award just 2 of the 10.4 hours Caballo has sought to bill on the opening motion for attorney's fees. The Court will therefore reduce the lodestar figure by $3,990 for time spent on preparing the initial fees motion.

8

### 4)        Administrative Motions

Defendants' also point to $6,018.50 requested for time Plaintiff's counsel spent preparing a motion to seek a continuance of defendants' motion for summary judgment from the Court and related declarations. ECF No. 130-10. That number is indeed substantial, but the motion was important to Plaintiff's litigation strategy. Moreover, Defendants opposed the motion and the Court ultimately granted it. ECF No. 72.

When the motions for summary judgment were submitted to the Court several months later, after which time the Plaintiff had been able to conduct further discovery, the Court ruled largely in Plaintiff's favor. ECF No. 107. Defendants' criticism that this motion should have been routine for the Rein Law attorneys, and therefore should have taken less time, is not well taken. Defendants increased Plaintiff's counsel's costs by refusing to stipulate to a continuance, see ECF Nos. 68, 69, and should not be heard now to complain about those costs. The Court finds that time spent by lawyers and paralegals on this motion was reasonably expended.

On the other hand, the Court notes that Paul Rein billed 4 hours strategizing and preparing an opposition to Defendant Berkeley Hardware's motion to amend their answer to include a statute of limitations defense. ECF No. 45. The Court ultimately granted Defendant's motion to amend over this objection, as discovery had not yet begun and the trial date was almost a year in the future. ECF No. 58. The Court will deduct the four hours Rein seeks to bill for preparing this motion from its fees award, finding that this time was not reasonably expended. An administrative motion of this kind need not have been drafted by a lawyer of Rein's experience, charging Rein's substantial hourly rate. "With four decades of experience in this area, Rein is an authority on ADA litigation. But in light of that specialized knowledge and his commensurately high billing rate, Rein should reasonably limit his involvement to matters requiring his level of skill." Hernandez, 2014 WL 1724356 at *8. Furthermore, a lawyer of Rein's experience and expertise should have recognized that it would be difficult at best to defeat a motion to amend an answer

9

when discovery had not yet even started and trial was almost a year away, and simply stipulated to permit the amendment. The Court will therefore reduce the lodestar figure by $2,580 for time spent on this opposition.

### 5) Ace Hardware

Defendants argue that time Plaintiffs spent pursuing claims against Ace Hardware should be deducted from Plaintiff's fees, because the Court ultimately granted summary judgment in favor of Ace Hardware, concluding that, as a franchisor, Ace lacked operational control over the store. Defendants claim that law was clear at the outset of the litigation that "a franchisor or licensor that does not control the day to day operations of the franchisee or licensee is not liable under the ADA." ECF No. 130 at 13 (citing Neff v. Am. Dairy Queen Corp., 58 F.3d 1063, 1066 (5th Cir. 1995) and Lentini v. California Ctr. for the Arts, Escondido, 370 F.3d 837, 849 (9th Cir. 2004)). In light of this backdrop, Defendants contend that this claim thus should not have been brought against Ace, because Defendants' counsel told Plaintiff's counsel at the outset of the litigation that Ace had no right or obligation to operate the store.

"California law requires a trial court to adjust a lodestar award to account for time spent exclusively on an unsuccessful claim." Muniz v. United Parcel Serv., Inc., 738 F.3d 214, 224 (9th Cir. 2013). "[T]he court must find that the time deducted did not aid in proving the successful claims." Id., 738 F.3d at 224. The Court agrees with Defendants that time spent by Plaintiff's counsel on claims against Ace Hardware exclusively should not be included in the fees award. The Court ruled in favor of Ace on the issue of damages at summary judgment, as the Court concluded that Lentini and Neff dictated that Ace was not liable as it lacked day to day operational control over the store. Although Plaintiff claims that the injunctive settlement reached with EQR states that Plaintiff is the prevailing party as to all Defendants, nothing agreed to in the settlement required Ace to take any action. See ECF No. 57. Therefore, the Court concludes that Plaintiff's claims against Ace were unsuccessful and time spent exclusively on those claim should be

deducted from the fees award.

Defendants have identified $13,713.50 in entries that they contend reflect time spent exclusively on claims against Ace Hardware. ECF No. 130-6. The Court does not agree with Defendants' characterization of all of the entries. For instance, Defendants have included time entries by McGuinness and Cabalo on April 3, 4, 7, and 8 relating to drafting a discovery letter brief that pertained to Plaintiff's claims against all three Defendants, located at ECF No. 74. The Court will not deduct these hours, as they include time spent on successful claims. Additionally, Defendants characterize entries made by Cabalo on May 12, 14, 16, and 19 as pertaining to the claims against Ace. These entries relate to a further discovery letter brief, located at ECF No. 79, and the discovery issues discussed in that brief did not involve Ace Hardware at all, but only involved Plaintiff's claims against Berkeley Hardware and EQR – on which Plaintiff prevailed. The Court will likewise not deduct these hours from the lodestar figure.

Defendants additionally ask the Court to consider that some of the time billed on summary judgment briefing was spent on drafting sections pertaining to the claims against Ace and to reduce the summary judgment fees accordingly. Plaintiff's affirmative motion did not pertain specifically to its claim against Ace and was successful, so therefore does not represent time spent exclusively on pursuing the unsuccessful claims. During summary judgment, Plaintiff opposed the portion of Defendants' motion that sought summary judgment in favor of Ace. Ace prevailed. It appears that Plaintiff's counsel billed 18.8 on its opposition to Defendants' motion. In light of this, the Court will subtract 4 hours of Cabalo's time spent drafting the opposition, to reflect the amount of time spent on opposing summary judgment as to the claims against Ace.

The Court will therefore deduct from the award of fees $10,378.50 of the $13,713.50 that Defendants have characterized as time Plaintiff's counsel spent pursuing claims against Ace Hardware. ECF 130-6. The Court will also deduct an additional $1,900 for time spent opposing the portions of Defendants' motion for summary judgment relating to Ace.

11

### 7) Bertha Johnson

Defendants also argue the Court should further reduce the fees award due to the time Plaintiff's counsel spent performing work on behalf of co-Plaintiff Bertha Johnson, who passed away during the course of the litigation. This does not provide a basis for further reducing the fees awarded to Plaintiff's counsel. The Rein declaration specifically addresses this issue, stating that "[a]ll work done on this case prior to Ms. Johnson's death was done on behalf of both plaintiffs, and no work was done, or time kept separately, for decedent Johnson." ECF No. 123 at 1 n.1. The Court credits this, as Johnson's claims were identical to Lemmons' and involved the same store location.

### 8) Conclusion

Defendants have identified some billing items which give the Court pause, particularly a large number of internal strategic meetings and an excessive amount of time spent on some items in motions practice. Nonetheless, the Court does not agree with all of Defendants' criticisms of the billing and does not find that Defendants' proposed 50% across the board slashing of the requested fees is justified. Plaintiff's counsel have thoroughly documented how they spent their time and have secured a victory for the Plaintiff and other disabled individuals seeking to access the store.

The Court will reduce the amount of hours Plaintiff's counsel spent billing internal strategic meetings by 50% in light of the excessive number of such meetings. The Court will also subtract from the hours requested 8.4 hours billed by Caballo in preparing the attorney's fees motion, 4 hours spent by Rein in preparing an opposition to Defendant Berkeley Hardware's motion for leave to amend its answer, and $10,378.50 in time spent pursuing claims against Ace Hardware. The Court therefore awards Plaintiff's counsel $218,237.5 of the $256,610 they have requested.

### C. Degree of Success

In addition to their claims regarding excessive billing, Defendants also ask the Court to reduce the fees due to Plaintiff's "limited success in light of the scope of the litigation." ECF No. 130 at 9-11, 17. In considering whether to reduce a fees award due to the limited success of a litigation, a district court "must deduct from the lodestar hours spent exclusively on unrelated unsuccessful claims; and second, the court must evaluate the remaining hours to determine if they were reasonably necessary to achieve the result obtained." Muniz, 738 F.3d at 224. The Court does not agree with Defendants' characterizations of the outcome of the litigation.

As a result of the injunctive settlement reached in this case, the store has become substantially more accessible to the disabled population. Specifically, the store created van-accessible parking and signage, provided bells for disabled customers to ring for assistance at a services counter, and removed barriers that had previously prevented wheelchairs from turning around aisles and obstructed elevator doors. ECF No. 131 at 2. The store also agreed to provide on its main floor a catalogue of items found on other floors that disabled customers could consult before attempting to access those floors. Id. Additionally, the settlement secured a number of changes to employee training at the store regarding assisting disabled customers. Id.

The Court also granted Plaintiff summary judgment for liability and damages against EQR and Berkeley Hardware, over the Defendants' cross-motions for summary judgment. ECF No. 107. The Court awarded Plaintiff $52,000 in damages. Id. The Court denied Defendants' motion for reconsideration. ECF No. 114. Given the number of defenses raised by Defendants' and Defendants' own summary judgment motion, Plaintiff's victory at summary judgment was hard-fought and the damages achieved for Plaintiff provided a substantial compensation for the "difficulties, discomfort, or embarrassment" she experienced upon visiting the store.

Defendants insinuate throughout their briefing that the fact that EQR intends to tear down the building in the near future somehow renders this litigation inappropriate or undermines the

13

value of the results achieved by Plaintiff.  Defendants also claim that the litigation was potentially unnecessary, as Plaintiff never requested alterations to the premises before filing her complaint and may have been able to obtain them without bringing suit.  The Court is not persuaded by these arguments (which are somewhat in tension with each other).  Plaintiff was not required to request changes prior to bringing suit.  Defendants' continued insistence that the allegedly-impending closure of the store somehow absolves them from making the premises accessible to disabled individuals indicates that Plaintiff would have been unlikely to persuade them to make the alterations without this litigation.  Indeed, the parties did not reach an injunctive settlement agreement until almost a year after the complaint was filed and Plaintiff compromised on several of her initial requests.

"The reason for the fee-shifting provisions of both the ADA and California law is to motivate plaintiffs' attorneys to advocate for full and equal access for the disabled to public accommodations."  Blackwell, 724 F. Supp. 2d at 1076.  The store remains open in the EQR building to this day and Plaintiff's lawsuit achieved an injunctive settlement which has ensured a greater degree of access for disabled people to the public accommodation.  This is the exact outcome the laws governing disabled individual's ability to access to public accommodations are intended to encourage.

### D. Plaintiff's Costs

Plaintiff requests an award of costs in the amount of $16,302.  The costs are well-documented and the request is unopposed.  The Court will grant the request in full.

/ / /

/ / /

/ / /

/ / /

/ / /

14

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Plaintiff's request for attorney's fees in part, and award $218,237.50.  The Court also grants the Plaintiff's award of costs in the amount of $16,302.  The total amount awarded by this order is $234,539.50.

**IT IS SO ORDERED.**

Dated:  February 1, 2015



JON S. TIGAR
United States District Judge